*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSE AUSTIN and SAMANTHA AUSTIN,

        Plaintiffs-Appellants,

v

MARK'S TIRE, INC., and U.P. TIRE, INC.,

        Defendants-Appellees.

UNPUBLISHED
January 7, 2021

No. 351929
Chippewa Circuit Court
LC No. 16-014420-NO

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Plaintiffs, Jesse Austin and Samantha Austin,[1] appeal as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) to defendants, Mark's Tire, Inc., and U.P. Tire, Inc. Plaintiffs argue that either Mark's Tire or U.P. Tire was at fault for an injury Jesse sustained at work while installing a split-rim wheel.[2] We disagree and affirm.

## I. UNDERLYING FACTS

On October 17, 2014, Jesse was injured while assisting his fellow employees at MCM Marine, Inc. (MCM) install a split-rim wheel that exploded during the installation process. Although Jesse had no experience with installing split-rim wheels, he was tasked with using an impact wrench to reinstall wheels onto a crane. When he reached the second to last lug nut, the lock ring exploded off of the split-rim and severely injured Jesse.

---

[1] Plaintiff Samantha Austin's loss of consortium, loss of services, and loss of companionship claims are derivative and are based on her status as plaintiff's lawful spouse. We refer to plaintiff Jesse Austin as "Jesse" for purposes of clarity.

[2] A split-rim wheel is a wheel that has three components that lock into place. Specifically, an uninflated tire is placed on the rim and then a flange and lock ring are connected to the rim and locked in place. After those three components lock together the tire is inflated.

Plaintiffs identified two potential actors who could have been at fault for the accident, Mark's Tire and U.P. Tire, because they were the only local contractors who mounted the crane's tires for MCM. Specifically, MCM purchased seven tires for the crane from Mark's Tire, and Mark's Tire mounted six of those seven tires on split rims; U.P. Tire occasionally provided maintenance services for the crane's tires.[3] Notably, defendants both established that they would not use a rim that showed signs of corrosion or dents. Additionally, in instances in which U.P. Tire serviced a rim due to corrosion, it sandblasted the corrosion off of the rim and painted it black, to protect the rim from future corrosion and so U.P. Tire could determine if it had previously serviced the wheel. The rim at issue in this case showed signs of extensive corrosion, had a dent, and was not painted black.

During depositions of MCM employees, each employee testified to not knowing who had last mounted a tire on the rim at issue. Deposition testimony revealed that the crane at issue was occasionally used off-site and that identifying who had last serviced a particular wheel was "impossible."[4] Defendants' employees also responded to several questions about the mounting process and how each of them handled damaged rims. When provided a photograph of the damaged wheel, the employees stated that the wheel would not have been placed back into service in such a condition.

Defendants eventually moved for summary disposition in separate motions. After a hearing on the matter, the trial court granted the motions, concluding that plaintiffs' argument was speculative, not supported by the testimony, and that the evidence presented was insufficient to establish a single likely explanation for the exploding wheel. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is

---

[3] MCM apparently purchased tires for the crane only from Mark's Tire.

[4] The crane was mobile and MCM occasionally used it at locations other than where it was routinely kept.

insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).

## III. ANALYSIS

Plaintiffs argue that sufficient evidence existed to establish a dispute of material fact regarding whether either Mark's Tire or U.P. Tire negligently mounted a new tire on the damaged split-rim wheel that caused Jesse's injuries. Specifically, plaintiffs present separate arguments in an attempt to establish causation by each defendant. First, plaintiffs argue that they can establish a reasonable inference that Mark's Tire negligently mounted a tire on the split-rim wheel in 2010 and the tire was kept as a spare, which later exploded when Jesse installed the tire on the crane. Secondly, plaintiffs argue that if Mark's Tire was not negligent, then U.P. Tire may have negligently mounted a tire on a defective rim during servicing. We disagree with both arguments.

As an initial matter, we note that we could consider plaintiffs' entire appeal abandoned because they failed to cite to any substantive law in any of the three briefs that they filed with this Court.[5] While plaintiffs did provide case law establishing the standard of review applicable to this case, they only cited two cases in their primary brief on appeal addressing this case on the merits, and one of those two cases was unpublished. Additionally, the two cases that plaintiffs cited in their primary brief addressed only the issue of credibility determinations. Indeed, plaintiffs never mentioned the four elements of negligence or the fact that whether either Mark's Tire or U.P. Tire breached their duty to install the tire reasonably is the dispositive issue in this case, because, assuming that negligence was involved (as to which there was insufficient evidence), there would still have to be evidence presented as to whose negligence caused the injury. While credibility determinations are important in this case, they are only important in relation to the issue of negligence, but plaintiffs failed to make that connection. Consequently, we could consider plaintiffs' entire appeal abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). Nevertheless, because we disfavor

---

[5] Plaintiffs filed three briefs in this case: (1) their primary appellant brief, (2) a brief replying to U.P. Tire's brief, and (3) a brief replying to the brief of Mark's Tires.

dismissing an appeal in its entirety on the sole ground that an appellant's argument is abandoned, we choose to address plaintiffs' appeal on the merits.[6]

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (citation omitted). The concept of causation encompasses both cause in fact and proximate cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). "In a negligence action, a plaintiff must establish both factual causation, i.e., 'the defendant's conduct in fact caused harm to the plaintiff,' and legal causation, i.e., the harm caused to the plaintiff 'was the general kind of harm the defendant negligently risked.' " *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (citation omitted). A court must determine that a plaintiff has established factual causation before legal causation becomes a relevant issue. *Id*. Cause in fact may be established by circumstantial evidence, but such proof must facilitate reasonable inferences and not be based on mere speculation. *Skinner*, 445 Mich at 163-164. Nonetheless, "causation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying [a] defendant's motion for summary judgment." *Id*. at 172-173. The circumstantial evidence must tend to narrow the possibilities to a single likely explanation. *Id*. at 164. Indeed, "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred," and it is insufficient for a plaintiff "to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id*. at 164-165.

Plaintiffs argue that because only defendants serviced MCM's wheels, the evidence is sufficient to establish that one of them acted negligently by failing to reasonably install the split-rim wheel, and the determination of which defendant is more at fault should be left to the jury. Indeed, plaintiffs rely almost exclusively on *Carr v Roger A Reed, Inc*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2017 (Docket No. 330115), for the proposition that when two possible defendants are identified, the court must consider the evidence against each defendant prior to granting summary disposition. We normally do not address unpublished opinions because they are not binding on this Court,[7] but because all parties have addressed it in their briefs we choose to do so here.

As a threshold matter, however, and viewing the evidence in the light most favorable to plaintiffs, the evidence fails to establish by a preponderance that negligent installation of the split-rim wheel led to the explosion. Jesse had not been trained in the proper way to handle split-rim wheels and, as such, he may have skipped some important steps in the process of placing the wheel

---

[6] Additionally, defendants have not argued that plaintiffs' arguments on appeal are abandoned and we similarly disfavor deciding cases based on arguments and theories not put forward by any parties in a case. We raise the issue of abandonment here, therefore, as constructive criticism, in the hope that by doing so counsel will be able to file more helpful briefs in the future.

[7] "An unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). However, unpublished opinions can be instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145; 783 NW2d 133 (2010).

back on the crane. Additionally, U.P. Tire's long-time employee, George Hill, testified that if an individual overtightened a wheel while using an impact wrench to install the tire, the base of the rim could "warp," causing a lock ring to "explode." The record evidence did not make it any less likely that an error by Jesse, as opposed to one by either of the defendants, was the reason for the explosion. On this record, any finding against one of the defendants would be based on speculation. See *Skinner*, 445 Mich at 164-165.

Turning to *Carr*, in that case the plaintiff was injured by paraffin wax. It was undisputed that the paraffin wax was supplied by one of the two named defendants in the case, and no other possible defendants existed. *Id*. at 2-3. One of the defendants supplied paraffin wax in large blocks that were wrapped in brown paper; the other defendant supplied wax in much smaller blocks that were not wrapped in brown paper. *Id*. at 3. The facts of the case clearly established that the wax used at the scene of the accident was in large blocks and wrapped in brown paper. *Id*. at 3-4. Consequently, the facts of the case did not present a situation in which it was equally possible that each defendant was at fault. *Id*. Thus, this Court concluded that only the defendant who supplied the wax in large blocks and wrapped in brown paper could have supplied the wax that led to plaintiff's injury. *Id*.

In this case, by contrast, the record suggests a possibility that someone other than defendants may have worked on the crane's wheels when the crane was used off-site. Indeed, Robert Chartrand, one of the owners of MCM, testified that the crane involved in the accident was occasionally used off-site, and MCM's general manager, Thomas Bumstead, stated,

> what we've had in the past, you know, we've gone on crane lifts and, you know, some of the job sites aren't the greatest. So, I mean, if we had flattened a tire or popped a tire or whatever, you know, any one of these tires could have been fixed or repaired at any given time.

Moreover, employees of both Mark's Tire and U.P. Tire presented testimony and invoices reflecting that MCM had occasionally purchased, at different times, tubes for the tires and a tire that was unmounted, and MCM's Controller, Thomas Spencer, testified that after his review of invoices, he could not establish who installed those items. Ultimately, just as plaintiffs could not establish who had mounted the tire on the specific rim at issue, plaintiffs also could not establish whether the wheel at issue underwent any repairs after the original tire purchase and mounting. Furthermore, after reviewing pictures of the rim that caused Jesse's injury, employees of Mark's Tire and U.P. Tire testified that they would not have used that rim. Rather, employees at Mark's Tire and U.P. Tire would have replaced the rim because it was corroded and dented.

Nonetheless, plaintiffs argue that because (1) Mark's Tire provided and mounted six of the seven tires MCM purchased for the crane, (2) the tire on the exploding rim was a new tire, and (3) the exploding rim was not painted with U.P. Tire's signature black paint, each of these facts supported an inference that it was more probable than not that Mark's Tire was at fault. This theory, however, is speculative and not supported by the record.

Notably, employees at MCM unequivocally testified that they did not know who last mounted or serviced the rim, or whether the wheel was a spare or in use prior to the accident. Indeed, Bumstead testified that due to the number of times the crane's wheels were handled,

determining who last mounted the wheel at issue was "almost impossible." Another MCM employee, Perron Reed, also suggested that he could not determine which defendant mounted the tire for the wheel at issue because he could only "guess" on the subject. Further, the only testimony on record regarding a new tire related to photographs shown by plaintiffs at depositions showing that the tires were barcoded by Michelin when new. But there is nothing in the record to support a conclusion that this photograph was of the actual tire involved in the accident. Additionally, while it is undisputed that the rim at issue was not freshly painted in black, it is also evident that the rim exhibited signs of corrosion. Most importantly, the wheel did not have any identifying marks that connected either the wheel or the tire to a particular defendant, and the last time Mark's Tire sold and mounted a tire for MCM was in October 2010—four years before the accident. As noted by Bumstead, "any one of these tires could have been fixed or repaired at any given time." Ultimately, plaintiffs could not establish who last mounted the subject wheel and, therefore, they cannot point to any evidence establishing that Mark's Tire mounted the specific wheel at issue in this case.

Plaintiffs further argue that if Mark's Tire did not mount the tire on the subject rim, U.P. Tire would be implicated by process of elimination. But this argument does not establish that U.P. Tire performed an act that caused Jesse's injury, and it certainly does not "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner*, 445 Mich at 164-165. Indeed, other than the fact that U.P. Tire worked on an unknown number of the crane's tires, no evidence establishes that U.P. Tire ever worked on the rim at issue here. Furthermore, the rim did not have U.P. Tire's signature black paint and it showed corrosion and dents that U.P. Tire would not have permitted. Additionally, as discussed earlier in reference to Mark's Tire, plaintiffs could not establish who last mounted the subject wheel, and therefore cannot point to any evidence establishing that U.P. Tire mounted the specific wheel at issue. Thus, plaintiffs have failed to establish that it is more probable than not that U.P. Tire acted negligently.

In sum, the record evidence simply does not support either of plaintiffs' arguments. Plaintiffs have presented no evidence allowing for a reasonable inference that either defendant's conduct led to Jesse's injury, or, indeed, that either defendant engaged in any negligent conduct at all. There are other possibilities that could have occurred over the course of the four years since MCM's last tire purchase from Mark's Tire, and the evidence in the record does not support a reasonable inference that there was a single most likely explanation for the explosion that caused Jesse's injury. *Skinner*, 445 Mich at 164, 172-173. Rather, plaintiffs' arguments regarding U.P. Tire rely merely on speculation and do not create an issue of fact because reasonable minds cannot reach different conclusions when considering these facts. *Id.* at 163-164. Thus, the trial court did not err by granting defendants' motions for summary disposition.

## IV. CONCLUSION

Plaintiff's evidence failed to establish negligence, and even if there was negligence, failed to establish the identity of whomever acted negligently. Consequently, for the reasons stated in this opinion, the trial court's order granting summary disposition to defendants is affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel